**The BMW STORES, INC.,
Plaintiff–Appellant,**

v.

**PEUGEOT MOTORS OF AMERICA,
INC., Defendant,**

**Eastern Auto Distributors, Inc., Riverside Ford, Inc., Defendants–Appellees.**

**No. 87–5566.**

United States Court of Appeals,
Sixth Circuit.

Argued May 13, 1988.

Decided Oct. 28, 1988.

---

Bernard C. Fox, Paul Nidich (argued), Cincinnati, Ohio, for plaintiff-appellant.

John Y. Pearson, Jr., Willcox and Savage, Norfolk, Va., for Peugeot Motors of America, Inc.

Patrick D. Lane, Dinsmore & Shohl, Cincinnati, Ohio, Christopher J. Mehling, Rhonda S. Morris (argued), Covington, Ky., for defendants-appellees.

Before ENGEL, Chief Judge, and KEITH and RYAN, Circuit Judges.

RYAN, Circuit Judge.

Under Kentucky law, an automobile distributor seeking to enter into a franchise agreement establishing an additional new car dealership may find itself unable to do so if its proposed dealership is within ten miles of an existing dealership selling the same automobile line. Ky.Rev.Stat.Ann. (KRSA) § 190.047(6). The issue in this case is whether the limitations imposed by § 190.047(6) apply when the existing dealership is within ten miles of the proposed dealership, but is located in another state. We conclude that § 190.047(6) does not apply under these facts because we conclude that the Kentucky legislature did not intend that the statute benefit out-of-state dealerships. Accordingly, we affirm.

I.

The facts of the case are undisputed. In 1985, defendant-appellee Peugeot Motors of America, Inc., enfranchised plaintiff-appellant The BMW Store (BMW) in Cincinnati, Ohio. The parties' franchise agreement was a non-exclusive contractual arrangement which allowed BMW to sell Peugeot automobiles. Sometime thereafter, defendant-appellee Riverside Ford, Inc. sought to enter into a franchise agreement with defendant-appellee Eastern Auto Distributors, Inc., a distributor of Peugeot cars independent of defendant Peugeot Motors of America. Riverside Ford is located in Newport, Kentucky, directly across the Ohio River from Cincinnati, and is less than ten miles from BMW.

Kentucky law states:

> In the event that a ... distributor ... seeks to enter into a franchise establishing an additional new motor vehicle dealership ... within or into a relevant market area where the same line make is then represented, the ... distributor ... shall, in writing, first notify the licensor [the Kentucky Motor Vehicle Commission] and each new motor vehicle dealer in such line make in the relevant market area, of the intention to establish an additional dealership ... with or into that market area. The relevant market area shall be a radius of ten (10) miles around an existing dealership.... [A]ny such new motor vehicle dealership may file with the licensor a protest to the establishment or relocation of the new motor vehicle dealership. When such a protest is filed, the licensor shall inform the ... distributor ... and that ... distributor ... shall not establish or relocate the proposed new motor vehicle dealership until the licensor has held a hearing, if the licensor has determined that there is good cause for not permitting such new motor vehicle dealership....

KRSA § 190.047(6). After discovering that Eastern Auto intended to enfranchise Riverside Ford as a Peugeot dealer in Newport, Kentucky, and that Eastern and Riverside did not intend to comply with the notice and hearing procedures set forth in § 190.047(6), BMW filed this diversity action seeking to enjoin Riverside's enfranchisement until such time as Eastern and Riverside comply with the notice and hearing provisions of § 190.047(6).

The district court denied BMW's motion for a preliminary injunction, a decision affirmed by this court in an unpublished opinion. *The BMW Store, Inc. v. Peugeot Mo-*

*tors of America, Inc., et al.,* No. 86–5360 (6th Cir. May 4, 1987) [817 F.2d 104 (table) ] (per curiam). In affirming the district court's denial of BMW's motion for preliminary injunctive relief, this court specifically rejected the defendants' contention that enforcement of § 190.047(6) to protect BMW would amount to an extraterritorial application of Kentucky law. *See Hilton v. Guyot,* 159 U.S. 113, 16 S.Ct. 139, 40 L.Ed. 95 (1895); *Dred Scott v. Sandford,* 60 U.S. (19 How) 393, 15 L.Ed. 691 (1857). We held:

> First, even if this were an application of the law beyond the states' borders, Kentucky can define the duties of its citizens without that definition being considered extraterritorial. *Parets v. Eaton Corp.,* 479 F.Supp. 512, 515 (E.D.Mich. 1979) (citing *Skiriotes v. Florida,* 313 U.S. 69 [61 S.Ct. 924, 85 L.Ed. 1193] (1941)); *Bankord v. DeRock,* 423 F.Supp. 602 (N.D.Iowa 1976); *Sexton v. Ryder Truck Rental, Inc.,* 413 Mich. 406 [320 N.W.2d 843] (1982). Riverside Ford, a Kentucky business, is subject to the laws of Kentucky. Second, where the defendants' conduct occurs in-state, application of the law to that conduct is not extraterritorial. *See Heilman v. Wolke,* 427 F.Supp. 730 (E.D.Wisc.1977); *Sexton,* 413 Mich. at 435–39 [320 N.W.2d 843]. Here, defendants' conduct is the establishment of a franchise in Kentucky. Although application of § 190.047 as plaintiff desires may benefit an out-of-state party because the ten mile limit fixed by the statute would utilize an Ohio focal point, thereby having consequences in Cincinnati, the conduct affected by the statute would occur only in Kentucky.

*The BMW Store, Inc.,* slip op. at pp. 4–5. We ultimately concluded that BMW had failed to demonstrate a likelihood that it would succeed on the merits because we agreed with the district court "that the statute is not likely to be construed to benefit an out-of-state dealership to the detriment of the interests of a Kentucky dealership...." *Id.* at p. 6.

While BMW's appeal of the district court's denial of its motion for preliminary injunctive relief was still pending before this court, the district court entered an unpublished order, filed April 13, 1987, granting the defendants' motion for summary judgment on the merits and dismissing BMW's complaint. The district court, without the benefit of this court's subsequent decision, concluded that by requiring the defendants to comply with the strictures of § 190.047(6), the court would be applying Kentucky law extraterritorially. The court reasoned:

> The question is not whether the Kentucky legislature could have enacted a statute which protected dealerships located in Ohio from competition by dealerships located in Kentucky. *The issue is whether the legislature intended to do so. Aided by well-established and generally accepted rules of statutory construction, the court concludes that it did not.*

Opinion and Order at p. 2 (emphasis added).

BMW now appeals the district court's order granting defendants' motion for summary judgment. While we disagree with the district court's ultimate conclusion that by applying § 190.047(6) to defendants it would be applying Kentucky law extraterritorially, we accept the court's underlying rationale that the Kentucky legislature did not intend to enact the statute for the protection of out-of-state dealerships. Accordingly, we affirm.

## II.

A federal court exercising diversity jurisdiction is "in effect, sitting as a state court." *Commissioner v. Estate of Bosch,* 387 U.S. 456, 465, 87 S.Ct. 1776, 1782, 18 L.Ed.2d 886 (1967). Accordingly, the district court was bound to determine, interpret, and apply Kentucky law.

As a reviewing court, we are reluctant to substitute our views of the state law for that of the trial judge. *Bernhardt v. Polygraph Company of America,* 350 U.S. 198 [76 S.Ct. 273, 100 L.Ed. 199] (1956). This policy is grounded in the rationale that a federal trial judge who sits in a particular state and has practiced before its courts is "better able to resolve certain questions about the law

of that state than is some other federal judge who has no such personal acquaintance with the law of the state." Wright, *Federal Courts* § 58, at 271 (3rd ed. 1976). "A federal district court judge's determination on the law in his state is, as a rule, entitled to great weight on review." *Avery v. Maremont Corp.,* 628 F.2d 441, 446 (5th Cir.1980). *Cole v. Elliot Equipment Co.,* 653 F.2d 1031, 1034 (5th Cir.1981).

We agree with the district court's determination that Kentucky's legislature did not intend that § 190.047(6) be applied for the benefit of out-of-state dealers who happen to be located within ten miles of a proposed Kentucky dealership. David Garnett, the Executive Director of Kentucky's Motor Vehicle Commission, "the licensor" under § 190.047(6), stated by affidavit that the Kentucky statute, which would require Eastern Auto and Riverside Ford to file a notice of their proposed enfranchisement and which would result in hearings before the Motor Vehicle Commission, would not apply where the protesting party is located out-of-state. Garnett stated that he would urge BMW's protest be rejected because it is outside "the relevant market area."

Further, the declared policy of Chapter 190 of the Kentucky Motor Vehicle Code states that since the sale of vehicles *"within this state* vitally affects the general economy *of the state,"* the regulation of dealerships and distributors "doing business in the state" is meant, in part, "to protect and preserve the investments and properties of *the citizens of this state."* KRSA § 190.015 (emphasis added). As this court originally held:

> [T]he public policy underlying the statute is declared to be the protection of the property and investments of the citizens of the State of Kentucky. The relevant market area therefore would seem to be restricted to the State of Kentucky. In

this case, application of Ky.Rev.Stat. § 190.047 at the behest of BMW would protect the property and investments of BMW, an Ohio dealership to the detriment of the investments and property of Riverside Ford, a Kentucky business.

*The BMW Store, Inc.,* slip op. at pp. 5–6. This construction is, as the district court noted, well supported by the applicable principles of statutory construction.[1]

BMW's argument that Kentucky's Motor Vehicle Commission should be the first forum to consider the merits of BMW's argument is unavailing given that BMW initially sought relief in the district court. Pursuant to BMW's own initiative, the district court was required to construe § 190.047(6) as if it were sitting as a Kentucky trial court. *See Bosch,* 387 U.S. at 465, 87 S.Ct. at 1782.

For the foregoing reasons, we AFFIRM the judgment of the district court.

---

1. See, *e.g.,* 73 Am.Jur.2d *Statutes* § 359:

> Unless the intent to have a statute operate beyond the limits of the state or country is clearly expressed or indicated by its language, purpose, subject matter, or history, no legislation is presumed to be intended to operate outside the territorial jurisdiction of the state or country enacting it. To the contrary, the presumption is that the statute is intended to have no extraterritorial effect, but to apply only within the territorial jurisdiction of the state of country enacting it. Thus, an extraterritorial effect is not to be given statutes by implication....